# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | **:** | |
| **CONFERENCE OF PRESIDENTS OF** | **:** | |
| **MAJOR ITALIAN AMERICAN** | **:** | |
| **ORGANIZATIONS, INC., et al.,** | **:** | |
| Plaintiffs, | **:** | **Case Number** |
| | **:** | **2:21-cv-01609-CDJ** |
| **V.** | **:** | |
| | **:** | |
| **CITY OF PHILADELPHIA, et al.,** | **:** | |
| Defendants. | **:** | |

## ORDER

     **AND NOW,** this ____day of _____, 2021, upon consideration of Defendants

City of Philadelphia and Mayor James Kenney's **Motion to Dismiss and Memorandum of Law in**

**Support** and any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED** and

the Complaint (ECF #1) is **DISMISSED WITH PREJUDICE**.


                      _____

                                              J.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **CONFERENCE OF PRESIDENTS OF MAJOR ITALIAN AMERICAN ORGANIZATIONS, INC., et al.,** | : : : : | |
| **Plaintiffs,** | : : | **Case Number** **2:21-cv-01609-CDJ** |
| **V.** | : : | |
| **CITY OF PHILADELPHIA, et al.,** | : : | |
| **Defendants.** | : | |

## DEFENDANTS' MOTION TO DISMISS

Defendants, the City of Philadelphia and Mayor James F. Kenney, file this Motion to Dismiss Plaintiffs' Complaint under Rules 12(b)(1) and 12(b)(6).  The Court should grant the motion for the reasons more fully explained in the accompanying memorandum.

WHEREFORE, the Defendants respectfully request that this Court grant the Motion and dismiss the Complaint with prejudice under Rules 12(b)(1) and 12(b)(6).

CITY OF PHILADELPHIA LAW DEPARTMENT
DIANA P. CORTES, CITY SOLICITOR

/s/ Benjamin Field
Benjamin H. Field
Divisional Deputy City Solicitor
Meghan Claiborne
Deputy City Solicitor
Lydia Furst
Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
(215) 683-5024
benjamin.field@phila.gov

Dated:  May 12, 2021

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **CONFERENCE OF PRESIDENTS OF** | : | |
| **MAJOR ITALIAN AMERICAN** | : | |
| **ORGANIZATIONS, INC., et al.,** | : | |
| Plaintiffs, | : | **Case Number** |
| | : | **2:21-cv-01609-CDJ** |
| **V.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

CITY OF PHILADELPHIA LAW DEPARTMENT
DIANA P. CORTES, CITY SOLICITOR

By: Benjamin Field, Esq.
Divisional Deputy City Solicitor
P.A. Bar No. 204569
Meghan Claiborne, Esq.
Deputy City Solicitor
P.A. Bar No. 315918
Lydia Furst, Esq.
Deputy City Solicitor
P.A. Bar No. 307450
 (215) 683-5024 / benjamin.field@phila.gov
*Attorneys for Defendants*

Dated: May 12, 2021

Defendants, the City of Philadelphia and Mayor James F. Kenney (collectively, "Defendants" or "City"), by and through their undersigned counsel, hereby file this Motion to Dismiss Plaintiffs Conference of Presidents of Major Italian American Organizations, Inc., Philadelphia City Councilmember Mark F. Squilla, the 1492 Society, and Jody Della Barba's ("Plaintiffs") Complaint under Rules 12(b)(1) and 12(b)(6).

## I.  <u>INTRODUCTION</u>

On January 27, 2021, the Mayor of Philadelphia, James Kenney, issued an Executive Order that addressed the nomenclature of the City holiday that falls on the second Monday in October.  That day, which had previously been designated "Columbus Day" and continues to be referred to as Columbus Day by the federal government and the Commonwealth of Pennsylvania, remains a City holiday but is now designated "Indigenous Peoples' Day" in Philadelphia.  As the Executive Order explained, Philadelphia is not alone in changing the name of this holiday to Indigenous Peoples' Day – Arizona, Michigan, Minnesota, North Carolina, Vermont, Virginia, Wisconsin and Washington, D.C. have taken similar steps.  The choice to rename Columbus Day Indigenous Peoples' Day reflects the importance in Philadelphia (and other communities) of acknowledging the deeply complicated history of Columbus and the 'discovery' of America.

On April 6, 2021, a consortium of Italian American organizations, a local Italian American non-profit, Councilman Mark Squilla, and a Philadelphia resident of Italian American heritage challenged the Mayor's Executive Order by filing the Complaint in this case.  Plaintiffs allege that the Mayor's Executive Order violates their equal protection rights under the United States Constitution and that it is contrary to state and city law.  As relief, Plaintiffs ask this Court to declare the Executive Order void and in effect require that the City must refer to the second

1

Monday in October as "Columbus Day".

Certainly, the City understands that Plaintiffs relate to Christopher Columbus as an important and heroic historical figure and symbol for their Italian American identity. The City also understands that Plaintiffs find the contemporary public discourse that views Columbus' history and the 'discovery' of America as deeply complicated to be mistaken. And we recognize that Plaintiffs would prefer that the City continue to refer to the second Monday in October as "Columbus Day." But a difference of opinion about the changing meaning of symbols and holidays that reflect our common heritage as a society does not create a cause of action that can be brought in federal court. There is no precedent to support the Plaintiffs' theory that anti-discrimination law provides a remedy when a political body like the City revisits and revises the words it will use to refer to a holiday. And this Court should dismiss Plaintiffs' claim as a matter of law. The words our elected officials use to refer to a municipal holiday constitute speech protected by the First Amendment; indeed other courts have rejected the rare cases in which a plaintiff has tried to bring an equal protection claim around the naming of holidays or changes to analogous symbols.

We discuss the legal reasons Plaintiffs' Complaint must be dismissed in detail below. At the outset, however, we must address Plaintiffs' broad and sweeping contention that the City has been engaged in "continued, unrelenting, and intentionally discriminatory acts … against its Italian American citizens." This allegation is absurd, frivolous, and lacking in any factual basis. The events Plaintiffs use to try and craft this narrative are wholly unrelated to the City's decision to acknowledge our deeply complicated heritage and therefore are of little relevance to this Court's legal analysis. Nonetheless, we address them in this brief because it is important to rebut Plaintiffs' false narrative. Each of the acts that Plaintiffs reference as purported proof of

discriminatory intent is either blatantly misrepresented or taken entirely out of context in the Complaint.

II.   **STATEMENT OF FACTS**[1]

As Plaintiffs allege in relevant part, Columbus Day as a national government holiday dates at least to 1934, when Congress designated October 12 of each year as Columbus Day. (Compl. ¶ 34.)  That Joint Resolution authorized and requested that the President of the United States issue "a proclamation designating October 12 of each year as Columbus Day and calling upon officials of the Government to display the flag of the United States on all Government buildings on said date and inviting the people of the United States to observe the day in schools and churches, or other suitable places, with appropriate ceremonies expressive of the public sentiment befitting the anniversary of the discovery of America."  (Compl. Ex. E.)  Three years later, President Franklin D. Roosevelt issued that proclamation.  (Compl. ¶ 35.)  In 1971, the date of the federal holiday was changed to the second Monday in October.  *See* Act of June 28, 1968, 82 Stat. 250, Pub.L. 90–363 (Uniform Monday Holiday Act).  Pennsylvania also recognizes Columbus Day as a holiday on the second Monday in October to commemorate "the discovery of America."[2]

---

[1] Because the Court must accept the facts alleged by Plaintiffs as true at the Motion to Dismiss stage, Defendants have based this Facts section on relevant facts alleged by Plaintiffs.  In addition, Defendants have included information of public record that is integral to or relied upon in the Complaint.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered"); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (matters of public record may be considered) (overruled on other grounds, *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997)).

[2] *See* 44 Pa. Stat. Ann. § 32 (West) ("The Governor shall issue, annually, his Proclamation designating and setting apart October 12 as Columbus Day, and calling upon the people of the Commonwealth, the public schools and other educational institutions and historical organizations

For its part, the Philadelphia City Council passed resolutions from 2013 to 2016 designating the week around Columbus Day as "Christopher Columbus/Italian American Heritage Week".   *See* Council of the City of Philadelphia, Resolution No. 130649 (Sept. 19, 2013), *available at* https://phila.legistar.com; Council of the City of Philadelphia, Resolution No. 140733 (Sept. 25, 2014), *available at* https://phila.legistar.com; Council of the City of Philadelphia, Resolution No. 160887 (Oct. 1, 2015), *available at* https://phila.legistar.com; Council of the City of Philadelphia, Resolution No. 160887 (Oct. 6, 2016), *available at* https://phila.legistar.com.  In 2017, the most recent Resolution to address the period around Columbus Day designated the week "Italian American Heritage Week."  Council of the City of Philadelphia, Resolution No. 170872 (Oct. 5, 2017), *available at* https://phila.legistar.com.  At the federal level, there has been a similar presidential proclamation.  October is recognized nationally as Italian American Heritage and Culture month.  *See* Presidential Proclamation-- Italian American Heritage and Culture Month  (October 14, 2010), *available at* https://obamawhitehouse.archives.gov/the-press-office/2010/10/14/presidential-proclamation- Italian American-heritage-and-culture-month ("I call upon all Americans to learn more about the history of Italian Americans, and to observe this month with appropriate programs and activities.").

On January 27, 2021, Mayor Kenney issued Executive Order 2-21 which had the effect of renaming Columbus Day as "Indigenous Peoples' Day" (the "Executive Order").  (Compl. ¶ 2 & Ex. A.)  The Executive Order acknowledged that "[t]he City of Philadelphia holds an integral place in our nation's founding as the birthplace of democracy, the Constitution, and the

---

to observe the discovery of the New World with appropriate exercises and programs, to the end that the discovery of America shall be commemorated each year.")

Declaration of Independence." (Compl. Ex. A.) The Executive Order further acknowledged that while the Declaration of Independence holds "that all men are created equal, that they are endowed by their Creator with certain unalienable rights, that among these are life, liberty and the pursuit of happiness," the United States continued to be "stained by the institution of slavery and racism." (*Id.*) The Executive Order further acknowledged the "deeply complicated" story of Christopher Columbus, *id.,* including that although he has been venerated as "discovering" the "New World," the "true history of his conduct is, in fact, infamous." (*Id.*) Specifically, that Columbus "enslaved indigenous people, and punished individuals who failed to meet his expected service through violence, and, in some cases, murder." (*Id.*) As such, the Executive Order states that as acknowledgment of this history, the City holiday of Columbus Day would henceforth be recognized as Indigenous Peoples' Day.[3]

In an accompanying Press Release, Mayor Kenney stated:

> We hope that for our employees and residents of color, this change is viewed as an acknowledgement of the centuries of institutional racism and marginalization that have been forced upon Black Americans, Indigenous people, and other communities of color. At the same time, we are clear-eyed about the fact that there is still an urgent need for further substantive systemic change in all areas of local government.

(Compl. ¶ 46.)

Plaintiffs allege that Mayor Kenney's act of replacing Columbus Day with Indigenous Peoples' day is the "most recent – but probably not the last – act in a long line of divisive, anti-Italian American discriminatory actions" by Mayor Kenney. (*Id.* at ¶ 7.) Plaintiffs allege a list of actions as apparently illustrative of this point. This includes referring to Mayor Kenney's

---

[3] The Executive Order also outlined the history of the creation of Juneteenth and its historical significance, and followed in step with Governor Tom's Wolf's January 19, 2019 designation of June 19th as "Juneteenth National Freedom Day" in Pennsylvania by designating the date as a holiday for all City employees. *Id.*

previous removal of the Frank L. Rizzo statue "in the middle of the night" from the plaza at the Municipal Services Building; the alleged "attempted" removal of the 140-year old Christopher Columbus statute from Marconi Plaza (*id.* at ¶¶ 8, 67-69); the manner in which the City distributed COVID relief vaccinations (*id.* at ¶¶ 11, 75-80); the reassignment of one Police Captain from his assignment in the First Police District (*id.* at ¶¶12, 73); and the Mayor's statement that individuals gathering at the Columbus Statue, whom Plaintiffs allege to have been Italian American South Philadelphia residents, were "vigilantes" and should "stand down." (*Id.* at ¶ 73.)  In addition, Plaintiffs allege that in 2016 Mayor Kenney, in discussing his desire for Philadelphia to remain a "Sanctuary City,"  purportedly stated that "[i]f this were Cousin Emilio or Cousin Guido, we wouldn't have this problem because they're white." (*Id.* at ¶¶ 13, 82.)

## III.   **ARGUMENT**

As a threshold matter, Plaintiffs lack Article III standing because they have not alleged any discriminatory treatment or concrete direct harm that they have experienced or will experience as a result of the Executive Order.  While Plaintiffs may disagree with and experience offense or denigration related to the Executive Order, under well-settled law, their generalized grievance with the City's messaging around a City holiday is insufficient to convey standing. Simply put, a federal court is not the appropriate forum for this debate.  Plaintiffs' Equal Protection claims also fail to state a claim upon which relief can be granted for multiple independently sufficient reasons.  Plaintiffs' claims are directed at government speech, which may not form the basis of an Equal Protection claim.  In addition, the Executive Order does not cause any unequal treatment.  To the extent Plaintiffs seek to bring a due process claim, that also fails as a matter of law because Plaintiffs have no property interest in the name of a holiday. Finally, Plaintiffs' state law claims are without merit and all fail as a matter of law, for the

6

reasons explained below.

### A. <u>Plaintiffs Lack Standing</u>

#### i.  *Rule 12(b)(1) Legal Standard*

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter

jurisdiction to hear a claim.  *In re Schering Plough Corp. Intron/Temodar Consumer Class

Action*, 678 F.3d 235, 243 (3d Cir. 2012); *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir.

2006) ("At issue in a Rule 12(b)(1) motion is the court's very power to hear the case." (internal

quotations omitted)).  The burden of establishing the federal court's jurisdiction always lies with

the plaintiff.  *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Save

Ardmore Coalition v.  Lower Merion Twp.*, 419 F. Supp. 2d 663, 669 (E.D. Pa. 2005).  It is

"presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from

the record."  *Renne v. Geary*, 501 U.S. 312, 316 (1991).

"A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may present

either a facial or a factual attack."  *Singleton v. Jas* Auto*. LLC,* 378 F. Supp. 3d 334, 342 (E.D.

Pa. 2019) (citing *Davis v.  Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)).  "A facial attack

concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a

plaintiff's claims to comport factually with the jurisdictional prerequisites."  *Id.* (citing *CNA v.

United States*, 535 F.3d 132, 139 (3d Cir. 2008)) (quotations omitted).

#### ii.  *The Complaint Should be Dismissed Pursuant to F.R.C.P. 12(b)(1) Because Plaintiffs Lack Standing and Therefore Have Failed to Establish a Justiciable Case or Controversy.*

Under Article III, Section 2 of the United States Constitution, the existence of a case or

controversy is a prerequisite for all federal actions.  *Philadelphia Fed'n of Teachers v. Ridge*,

150 F.3d 319, 322-23 (3d Cir. 1998); *Pro. Dog Breeders Advisory Council, Inc. v. Wolff*, 752 F.

Supp. 2d 575, 583 (E.D. Pa. 2010).  To establish Article III standing, a plaintiff must show that

"it has suffered a cognizable injury that is causally related to the alleged conduct of the defendant and is redressable by judicial action." *Pro. Dog Breeders Advisory Council*, 752 F. Supp. 2d at 583–84 (citing *Pa. Psychiatric Soc'y v. Green Spring Health Serv. Inc.*, 280 F.3d 278, 283 (3d Cir. 2002), *cert. denied*, 537 U.S. 881 (2002)).  The injury must be an "invasion of a legally protected interest" which is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Plaintiffs' claim to standing in this case relies entirely on their bare assertion that the Executive Order discriminates against Italian Americans.  (*See* Compl. ¶ 89 ("Unequal  treatment is  a  type  of  personal  injury that  has  long  been recognized  as judicially cognizable and virtually every circuit court has reaffirmed–as has the Supreme Court—that a discriminatory classification  is  itself  a  penalty,  and  thus  qualifies  as  an  actual  injury  for  standing purposes, where a citizen's right to equal treatment is at stake.); Compl. ¶ 90 ("Mayor Kenney's Executive Order discriminates against Italian Americans by repealing a holiday that recognizes their ethnicity while simultaneously awarding a new holiday, on that same day, to a different but similarly situated group.").)  But this alleged harm is neither concrete nor cognizable.  And, even if Plaintiffs could base a claim on the notion that changing the name of a holiday discriminates against a particular group, their bare assertion is belied by the public record and exhibits to the Complaint, as well as applicable case law.

As an initial matter, any offense, denigration, or stigma experienced by Plaintiffs as a result of the Executive Order is alone insufficient to convey standing.  In cases where the plaintiff is alleging discrimination based upon race or national origin, standing must be established by demonstrating that the plaintiffs have themselves directly experienced unequal treatment.  In *Moore v. Bryant*, an African-American Mississippi lawyer sued the Governor of

Mississippi, claiming that the depiction of the Confederate battle flag on the Mississippi state flag violated his Equal Protection rights. 853 F.3d 245, 248 (5th Cir. 2017). While the plaintiff alleged that he was "personally and deeply" impacted by the flag, the Court of Appeals for the Fifth Circuit held that the plaintiff lacked standing because he did not allege any discriminatory *treatment* related to the flag. *Id.* at 251. As the Fifth Circuit cogently explained, "the gravamen of an equal protection claim is differential governmental treatment, not differential governmental messaging." *Id.* at 250; s*ee also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 485-86 (1982) (holding that "the psychological consequence presumably produced by observation of conduct with which one disagrees . . . is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms")

Similarly, in *Allen v. Wright*, the parents of African-American schoolchildren sued to compel the Internal Revenue Service to deny tax-exempt status to schools that discriminated on the basis of race. 468 U.S. 737, 739-40 (1984*), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). The parents in *Allen* claimed that their children suffered a "stigmatic injury, or denigration" when the government supported racially discriminatory institutions. *Id.* at 754. The Court held that the plaintiffs lacked standing, explaining that standing extends "only to those persons who are personally denied equal treatment by the challenged discriminatory conduct." *Id.* at 755 (internal quotation marks omitted); *see also, Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 822 (7th Cir. 2014) (holding that the *Allen* inquiry is unchanged when plaintiffs claimed to be part of small group facing discrimination); *In re U.S. Catholic Conference*, 885 F.2d 1020, 1026 (2d Cir. 1989) (finding that under *Allen*, clergy do not have special standing status based on the sincerity

of their beliefs).

In *Harris v. United States*, the founders of a non-profit organization that sought to promote African-American history alleged that the government's selection of federal holidays violated their Equal Protection rights.  447 F. Supp. 2d 208, 209 (D. Conn. 2005).  The plaintiffs in *Harris* claimed that the government's selection of holidays was systemically biased against African-Americans and that "the voice of the government—uniquely authoritative as the voice of the people—is expressing the idea that [African American] heritage is less worthy of celebration, or that [African Americans] are somehow inferior persons."  *Id.* at 211-12 (quoting *Mehdi v. United States Postal Service*, 988 F. Supp. 721, 730 (S.D.N.Y.1997)).  The Court held that the plaintiffs lacked standing, explaining that "it is not the seriousness of the harm but its generality that determines whether a federal court is the proper forum for addressing it."  *Id.* at 212.  The Court noted that while the plaintiffs had alleged that the government's selection of federal holidays was racially biased and that this caused deep pain for African-Americans, this was insufficient to confer standing because "in our constitutional design of separated powers and a limited judiciary, federal courts are simply not empowered to resolve 'generalized grievance[s] against government conduct of which [the plaintiff] does not approve.'"  *Id.* (quoting *U.S. v. Hays*, 515 U.S. 737, 745 (1995)).

Likewise here, Plaintiffs' allegations are about messaging, not treatment, and convey a generalized grievance, not a particularized and concrete harm.  The second Monday in October remains a City holiday (with the same benefits available to City workers).  The only change is that the City refers to the holiday as Indigenous Peoples' Day rather than Columbus Day.  While some Philadelphians (including some of the Plaintiffs in this case) may be offended by this change, they will not experience any discriminatory *treatment* related to the official renaming of

10

the holiday.  Philadelphians who choose to may still enjoy celebrations honoring Italian American heritage in October and throughout the year and even can celebrate October 12th as Columbus Day.  (*See* Compl. ¶¶ 35, 184 (Columbus Day is a federal and Pennsylvania holiday).)

And even if Plaintiffs' alleged harm – the changing of the name of a City holiday – were concrete and cognizable (it is not), the face of the Complaint and its attachments contradict Plaintiffs' allegation of harm for two reasons.

First, although Plaintiffs and others may claim Columbus as an important figure to their own Italian American identity, Columbus Day as a government holiday does not confer a benefit specific to any group.  Indeed, both at the federal and state level, Columbus Day has been established as a means of commemorating a shared national history – the 'discovery' of America.  (*See, e.g.*, Compl. Ex. E (the 1934 Joint Resolution of Congress which refers to celebrating "the anniversary of the discovery of America"); Compl. ¶ 181 (citing the reference to Columbus Day in the Pennsylvania statutes which says "to the end that the discovery of America shall be commemorated each year") (quoting Act of Aug. 13, 1963, P.L. 660, No. 345, § 1 ("44 P.S. § 32).)  Similarly, the City holiday formerly known as Columbus Day and now renamed Indigenous Peoples' Day was and is a holiday for all municipal employees and, to the extent they choose to recognize it, a day of celebration and/or remembrance for all Philadelphians.  It commemorates an aspect of the history of the Americas; it was never a holiday honoring or exalting one ethnic group over another.  Changing the name of an official holiday from Columbus Day to Indigenous Peoples' Day creates at most a generalized grievance.  This alleged harm cannot confer standing and does not result in unconstitutional unequal treatment to Italian Americans.  *See* Section III.B below.

Second, even if there were a concrete harm based on the City changing the name of

Columbus Day, the organizational and individual Plaintiffs in this case have failed to allege any discriminatory treatment or other concrete harm that they will directly experience as a result of the Executive Order.  To wit, while Plaintiff the 1492 Society alleges it is involved in organizing the annual Columbus Day parade, they do not allege (nor could they) that the Executive Order will prevent them from organizing a parade honoring Christopher Columbus and/or Italian American heritage.  (*See* Compl. ¶ 17.)  Plaintiff COPOMAIO is a New York non-profit with no apparent connection to Philadelphia.  (*See* Compl. ¶ 15 & n.1.)  It is unclear how Philadelphia's naming of a holiday impacts an organization whose identified members appear to have no direct nexus to the City.  *See, e.g.*, *Harris*, 447 F. Supp. 2d at 211 (holding plaintiffs, who were founders of an organization dedicated to promoting African-American history, lacked standing where they failed to allege direct harm from federal government's alleged racial bias in selection of holidays); *Mehdi v. U.S. Postal Serv.*, 988 F. Supp. 721, 723 (S.D.N.Y. 1997) (holding Muslim plaintiffs' purported harm stemming from Postal Service's refusal to display the Muslim star and crescent along with other holiday decorations was effectively a "generalized grievance against government conduct of which he or she does not approve" and insufficient to support standing) (quoting *United States v. Hays,* 515 U.S. 737, 745 (1995)).  Finally, the Complaint does not even attempt to allege any specific harm experienced by Plaintiffs Della Barba and Squilla[4] as a result of the Executive Order.  Accordingly, the Complaint fails not only to allege a

---

[4] The Complaint avers that Councilmember Squilla is a Plaintiff in both his personal and official capacity.  (Compl. ¶16.)  As argued herein, Plaintiffs have no standing at all in this case.  To the extent Councilmember Squilla brings this matter in his official capacity, his counsel's representation of him is contrary to the Philadelphia Home Rule Charter which provides that legal representation of the City be authorized by the City Solicitor.  No such authorization has been sought or granted.  On May 4, 2021, counsel for the City wrote to Plaintiffs' lead counsel, identified the violation, and requested corrective action.  To date, no such action has been taken.  Counsel for the City reserves the right to address this matter further in the appropriate manner

harm that is cognizable, but it also fails to allege any discriminatory treatment or concrete harm as to the Plaintiffs in this case.  This failure is fatal to the Complaint.  *See, e.g., Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 542 (3d Cir. 2011) ( "In the equal protection context, an injury resulting from governmental racial discrimination accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct.") (internal citations and quotations omitted).

Because Plaintiffs have failed to allege a concrete and cognizable harm, Plaintiffs lack standing under Article III and the Complaint should be dismissed pursuant to Rule 12(b)(1).

### B.  Plaintiffs Fail to State a Claim Upon Which Relief May be Granted

#### i.  *Rule 12(b)(6) Legal Standard*

The applicable standard for a Rule 12(b)(6) motion is well-settled.  Under this Rule, the Court must dismiss an action on motion made before a responsive pleading is filed, when a complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). "[A] plaintiff's obligation to provide the 'grounds' of his "'entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that a Complaint must contain something more than "naked assertion[s]" devoid of "further factual enhancement.").  "The basic principle that a court must accept all allegations as true is inapplicable to either legal conclusions or [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 72 (3d Cir.

---

and forum should it be unable to resolve absent court intervention.

2011) (quoting *Iqbal*, 556 U.S. at 678).

> ii. *Identification of a Municipal Holiday Constitutes Government Speech Which Cannot be Restricted.*

Plaintiffs' federal claims fail because the Mayor's Executive Order that determines the way a City holiday should be referred to, including the information in that Executive Order about Columbus, constitutes protected government speech. Plaintiffs have no right to tell the City what it must call the second Monday in October nor can Plaintiffs insist the City refrain from saying things about Columbus with which they disagree. For this reason alone, the Executive Order cannot serve as the basis of an equal protection claim.

"A government entity has the right to 'speak for itself.'" *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) (quoting *Board of Regents of Univ. of Wis. System v. Southworth*, 529 U.S. 217, 229 (2000)). When it speaks, the government "is entitled to say what it wishes," and "to select the views that it wants to express." *Summum*, 555 U.S. at 467-468 (2009) (citations omitted). *See also, Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) ("When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says.") (citing *Summum*, 555 U.S. at 467-468). The freedom of government speech reflects, in part, the fact that it is "the democratic electoral process that first and foremost provides a check on government speech." *Walker*, 576 U.S. at 207 (citing *Board of Regents of Univ. of Wis. System v. Southworth*, 529 U.S. 217, 235 (2000)).

"Were the Free Speech Clause interpreted otherwise, government would not work." *Walker*, 576 U.S. at 207; *see also Summum*, 555 U.S. at 467 ("Indeed, it is not easy to imagine how government could function if it lacked this freedom."). As the Supreme Court has recognized, "[i]f every citizen were to have a right to insist that no one paid by public funds express a view with which he disagreed, debate over issues of great concern to the public would

14

be limited to those in the private sector, and the process of government as we know it radically transformed." *Keller v. State Bar of Cal.*, 496 U.S. 1, 12-13 (1990). Plaintiffs' claims fail because the City's renaming of a City holiday constitutes government speech and the government is entitled to say what it wishes.

In recognition of these principles, the Third Circuit has joined its sister circuits in expressly holding that "the Equal Protection Clause does not apply to government speech." *Fields v. Speaker of Pennsylvania House of Representatives*, 936 F.3d 142,160-1 (3d Cir. 2019) (affirming District Court's rejection of plaintiff's equal protection claim holding that private citizens "have no personal interest in government speech on which to base an equal protection claim") (quoting *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 970 (9th Cir. 2011) (internal citation omitted)). In *Fields*, the Third Circuit relied upon the Sixth Circuit's rejection of a challenge by the "Freedom From Religion Foundation" (the "Foundation") to include a sign espousing the Foundation's views among the defendant-city's holiday display which contained secular and seasonal decorations, including a lighted tree, ornaments, snowmen, gifts, flowers, candy and a nativity scene, among other objects. *Freedom from Religion Found., Inc. v. City of Warren, Mich.*, 707 F.3d 686, 690, 698 (6th Cir. 2013). Notable for Plaintiffs' claim here, the Sixth Circuit held that the display did not violate the equal protection clause, explaining:

> To the extent the Foundation means to claim that the City's government speech commemorating the holiday disparately treats its preferred message, the answer is: welcome to the crowd. Not everyone, we suspect, is happy with the City's holiday display from one year to the next. And the Foundation, like everyone else, is free to urge the City to add or remove symbols from the display each year or to try to elect new officials to run the City – the customary answer to permissible government speech and the customary answer to policies with which citizens disagree.

*Id.* at 698.

Just like the Foundation plaintiff whose claim the Sixth Circuit rejected, Plaintiffs here

are free to urge the City to change its position or to try and elect new officials to run the City. They cannot, however, state an equal protection claim based on their subjective interpretation of what Columbus Day means or their disagreement with the City's statements in the Executive Order.  As the Supreme Court explained in *Summum*, 555 U.S. at 473-75, objects and statues do not have static meaning and the message conveyed by them may change over time.  The same is true of government recognized holidays.  Plaintiffs are certainly free to have their interpretation of Columbus' history as well as their view of the history of this continent, the 'founding' of the New World, and the United States of America.  But those views, and Plaintiffs' assertion that they contrast with how Plaintiffs perceive the City's views, do not create a cause of action.  As the case law above emphasizes, disputes over the meaning of our historical symbols are to be contested through politics and in the court of public opinion, not in this Court as the basis of an alleged equal protection violation.

> iii. *Counts I-III Fail to State a Claim Because the Executive Order Does Not Cause Any Unequal Treatment nor Does It Result in Any Suspect Classification.*

In Counts I through III, Plaintiffs claim that the Executive Order changing the name of the City-recognized holiday that is the second Monday in October from Columbus Day to Indigenous Peoples' Day violates Plaintiffs' equal protection rights.  Although creative, this attempt to enjoin the City's speech, relying on Plaintiffs' effort to tie together a range of actions wholly unrelated to the renaming of the City holiday, fails to satisfy the basic requirements of an equal protection claim and should be dismissed as a matter of law.

To state the *prima facie* elements of a claim for equal protection, Plaintiffs must allege facts sufficient to establish that they are:  "(1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class."  *Wilkins by Green v. Chester Upland Sch. Dist.*, 89 F. Supp. 3d 682, 693

16

(E.D. Pa. 2015), *aff'd sub nom. A.G. v. Chester Upland Sch. Dist.*, 655 F. App'x 125 (3d Cir. 2016) (citations omitted).  Plaintiffs cannot satisfy any of these requirements.  As an initial matter, although Plaintiffs allege that the City is "distributing burdens and benefits unequally" (Compl. ¶¶ 98, 99), their "labels and conclusions" and "formulaic recitation of the elements of [the] cause of action" are not enough to support their claim.  *See Twombly*, 550 U.S. at 555. More specifically, Plaintiffs do not, and cannot, identify any burden or benefit that is distributed unequally.

There are two potential benefits implicated here: (1) the employment benefit of a municipal holiday in the form of a day off, and (2) the dignity benefit of being recognized by the City.  As to the first benefit, the renaming of a municipal holiday leaves the benefit unchanged (the benefit of an official City holiday on the second Monday in October continues to accrue to City employees) and Plaintiffs do not (and cannot) allege that this benefit is distributed unequally.  The second "benefit," the dignity of being recognized by the name of the holiday, is legally insufficient here to give rise to a claim.  While an alleged harm to dignity may serve as the basis of an equal protection claim in the right circumstances, the purported harm here is not specific to Plaintiffs.  Rather, it is a generalized grievance against the City's conduct in changing the name.  *See supra* Section III.A.ii.  This renders it insufficient to be the sort of treatment necessary to state an equal protection claim.  *See Harris*, 447 F. Supp. 2d at 211–13 (dismissing a claim that federal holiday determinations violated equal protection).

Moreover, Plaintiffs are unable to establish a harm to dignity given that it is premised upon their subjective interpretation of Columbus Day.  Plaintiffs' argument is premised on the interpretation that Columbus Day is a celebration of Italian American ethnicity.  As discussed above in Section III.B.ii, while this is Plaintiffs' stated understanding of the meaning of

17

Columbus Day, a holiday – much like any other symbolic object or act – may have dramatically different meanings to different people.  *See, e.g. Summum*, 555 U.S. at 475-76 ("it frequently is not possible to identify a single "message" that is conveyed by an object or structure").  For instance, the Pennsylvania Statute regarding the adoption of Columbus Day as a Commonwealth holiday indicates that it was adopted, at least in part, "to observe the discovery of the New World."  44 P.S. § 32.

Even if this Court were to conclude that Plaintiffs had alleged sufficient facts to infer (at this stage in the litigation and for the purposes of considering this Motion to Dismiss) that Columbus Day was established as a municipal holiday in Philadelphia, at least in part, to celebrate Italian American heritage, such a meaning may change as "historical interpretations" and "the society around them changes." *Summum*, 555 U.S. at 477.  The historical re-examination of Christopher Columbus and his relationship to indigenous peoples is not limited to Philadelphia; Arizona, Michigan, Minnesota, North Carolina, Vermont, Virginia, Wisconsin and Washington, D.C. have all similarly renamed the second Monday in October to Indigenous Peoples' Day based upon similar, revised historical understanding of Christopher Columbus. (*See* Compl. at Ex. A.)  Plaintiffs are effectively asking this Court to make a determination as to the correct historical interpretation of Christopher Columbus' relationship with indigenous peoples, to accept that Plaintiffs' subjective interpretation of the meaning of the holiday is the sole, correct interpretation, and to order that these interpretations are to remain static going forward.  There is no support for such a request.  *See Summum*, 555 U.S. at 477, 481.  To the contrary, the Supreme Court has specifically cautioned against turning courts into "'no more than a vehicle for the vindication of the value interests of concerned bystanders.'"  *Allen*, 468 U.S. at 756 (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)).

Finally, even if Plaintiffs were correct that an equal protection analysis applied to the

Executive Order, the Executive Order easily satisfies the rational basis review standard that

applies in this context.  Absent purposeful or pretextual discrimination, laws that are neutral on

their face with respect to race are subject to rational basis review.  *Lower Merion Sch. Dist.*, 665

F.3d at 544 – 545 (discussing facially neutral actions); *see also Associated Builders &*

*Contractors, E. Pennsylvania Chapter, Inc. v. Cty. of Northampton*, 376 F. Supp. 3d 476, 492–93

(E.D. Pa. 2019), aff'd sub nom. *Associated Builders & Contractors E. Pennsylvania Chapter Inc*

*v. Cty. of Northampton*, 808 F. App'x 86 (3d Cir. 2020) (facially neutral policies require "a

rational means to serve a legitimate end"); Schuette *v. Coal. to Defend Affirmative Action*, 572

U.S. 291 (2014).  The Executive Order is plainly neutral on its face as the treatment it offers –

the benefit of a City holiday – is extended equally to all City employees, irrespective of group

membership.  And even if Plaintiffs claim the change in name disproportionately impacts them,

the plausible justification for that change – recognizing the different views of Columbus as a

historical figure, the complicated history of the 'discovery' of America by Europeans, and the

dignity of the indigenous people who inhabited this continent at that time – is explained on the

face of the Executive Order itself.  (Compl. Ex. A.)  "[A]bsent a racially discriminatory purpose,

explicit or inferable, on the part of the [decisionmaker], the statutory distinction is subject only to

rational basis review."  *Lower Merion Sch. Dist.*, 665 F.3d at 544.

Plaintiffs, in an apparent attempt to direct the Court to apply strict scrutiny to the decision

about the words the City uses to refer to a holiday, allege a litany of disconnected actions which

are taken out of context, in an attempt to claim these actions reflect animus towards the Italian

American community.  As an initial matter, none of these actions demonstrate animus towards

19

the Italian American community.[5]   More importantly for the purposes of this case, none of these

---

[5] The first two actions cited by Plaintiffs, the removal of the statue of Frank Rizzo and events related to the Columbus statue in Marconi Plaza, concern the City's efforts to protect public safety during an unprecedented pandemic and amidst civil unrest in the summer of 2020.  As the Mayor's statement quoted in the very article cited by Plaintiffs makes clear, the City was focused on public safety and a process that could give all residents a voice.  (*See* Compl. Ex. P ("'It's also my hope that by initiating this process, the current tensions in Marconi Plaza can end,' Kenney said. 'I urge all South Philadelphians attempting to protect the statue to stand down and have your voices heard through the public process.'").)

The third action cited by Plaintiffs is the alleged reassignment of a police officer.  While the City disagrees with Plaintiffs' characterization of the basis for the officer's reassignment, an individual employment decision from the summer of 2020 cannot possibly be the basis for claiming animus towards an entire community as Plaintiffs have done here.

The fourth alleged action relates to the City's efforts to ensure equitable distribution of COVID-19 vaccinations and blatantly misrepresents the record.  Plaintiffs' allegation that "On February 19, 2021, the City, at Mayor Kenney's direction, released the first 20 Philadelphia zip codes eligible to receive the COVID-19 vaccine" (Compl. ¶ 76), is based on a news article discussing one of the many vaccination opportunities available in the City, a 24-hour walk-in clinic operated by the Black Doctors COVID-19 Consortium.  The Black Doctors COVID-19 Consortium, not the City, operated the clinic that is the subject of that article, and many other opportunities to obtain the vaccine were available throughout the City at that time to eligible residents.  (Compl. Ex. S.)  Vaccine eligibility in Philadelphia was governed by age, occupation, health conditions, and living conditions, not geography.  (*See* Compl. Ex. R.)  Further, vaccines were available to eligible residents through a wide range of providers, including pharmacies, neighborhood clinics, City health centers, and hospital systems.  *Id.*  For a limited time, the joint FEMA-City Clinic at the Philadelphia Convention Center offered walk-up appointments to Philadelphians living in the zip codes with the lowest vaccination rates.  As Plaintiffs concede in the Complaint, 19148 was ***not*** among the Philadelphia zip codes with the lowest vaccination rates.  (Compl. ¶¶ 70-80); *see also* PDPH Vaccination Dashboard, Residential Demographics, *available at* https://www.phila.gov/programs/coronavirus-disease-2019-covid-19/data/vaccine/ (showing 19148 among highest vaccination rates in the City).

And the fifth and final allegation relates to one quote attributed to Mayor Kenney in an article from 2016.  As that article makes clear, Mayor Kenney was discussing the City's efforts as a sanctuary city to protect all its residents and explaining that he believes the current anger towards immigrants was in part because they are "brown and black people."  The words Plaintiffs take issue with, to the extent the quote is accurate, reflect the Mayor's view that if the undocumented immigrants at issue were white, there would not be the same anger.  They do not support Plaintiffs' assertion of animus here.  *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, __ U.S. __, 140 S. Ct. 1892, 1916 (2020) (statements which are "remote in time and made in unrelated contexts" "do not qualify as "contemporary statements" probative of the

actions bear any relationship to the naming of a holiday and cannot serve as the basis of alleged

motivation here.  A 2016 statement by the Mayor, decisions addressing social unrest and public

health and safety during protests and demonstrations, an individualized employment decision,

and decisions by the City and a non-profit partner during efforts to address the COVID-19

Pandemic are completely untethered from the facts and actions at issue in this case.  "Allegations

about other people's mental states are conclusory unless they are linked to facts from which the

relevant mental state might be inferred."  *Wilkins by Wilkins v. City of Philadelphia*, No. CV 16-

5926, 2017 WL 3263891, at *4 (E.D. Pa. July 31, 2017) (Jones, J.) (quoting *Burnett v.*

*Springfield Twp.*, No. CIV.A. 13-1646, 2014 WL 3109963, at *5 (E.D. Pa. July 8, 2014)); *see*

*also*, *Twombly*, 550 U.S. at 554-55.  The Executive Order is straightforward and facially neutral

and even if an equal protection claim could be brought would easily satisfy a rational basis

analysis.

### iv.  *Plaintiffs Fail to State a Procedural Due Process Claim.*

Plaintiffs have not specifically pled procedural due process as a separate cause of action.

They have alleged, however, that Mayor Kenney's actions in "unilaterally" issuing Executive

Order No. 2-21 were inappropriate because he did not seek approval from City Council or the

Civil Service Commissioner, did not provide the public with notice and opportunity to be heard,

did not consider Pennsylvania state law designating Columbus Day as a holiday, and did not

engage in "activity integral to a functioning democracy."  (Compl. ¶ 6.)  To the extent Plaintiffs

---

decision at issue).

intend these allegations to signal a due process claim, that claim fails.

   To prevail on "a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide due process of law." *Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ.,* 587 F.3d 176, 194 (3d Cir. 2009) (internal quotation and citation omitted). "In evaluating a procedural due process claim, we first determine whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property." *Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007) (quotation marks and citation omitted). Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

   Here, Plaintiffs had no property interest in the City's continued recognition of October 12 as "Columbus Day." "Property interests do not arise from the Constitution itself. They are defined by existing rules or understandings that stem from an independent source, such as state law." *Dist. Couns. 33, Am. Fed'n of State Cty. & Mun. Emps., AFL-CIO v. City of Philadelphia*, 944 F. Supp. 392, 395 (E.D. Pa. 1995) (citing *Roth*, 408 U.S. at 577), *aff'd sub nom. Dist. Council 33, Am. Fed'n of State, Cty. & Mun. Emps. v. City of Philadelphia*, 101 F.3d 690 (3d Cir. 1996). Plaintiffs have not identified, and Defendants are not aware of, any independent

source which provides Plaintiffs a property interest in the words used by the City to refer to a specific holiday.

Because Plaintiffs lack any property interest in the name of a City holiday, any claim for procedural due process must fail as a matter of law. *See, e.g., Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 598 (E.D. La. 2016), *aff'd sub nom. Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250 (5th Cir. 2017) (finding that plaintiff's due process claim stemming from City's removal of Confederate era monument was unlikely to succeed on the merits because plaintiff failed to demonstrate that they had a recognized property interest in the monument); *McClain v. Henderson Cty.*, No. 1:17-CV-205, 2018 WL 792072, at *3 (W.D.N.C. Feb. 8, 2018), *aff'd sub nom. McClain v. Henderson Cty., N. Carolina By & Through Elected Bd. of Commissioners*, 731 F. App'x 235 (4th Cir. 2018) (dismissing due process claim where plaintiff failed to establish through state law or otherwise that he had a property interest in the city street name); *Perry v. City of Bogalusa*, No. CIV.A. 11-1786, 2012 WL 4344598, at *2 (E.D. La. Sept. 21, 2012) (same). *See also*, *Rankel v. Town of Somers*, 999 F.Supp.2d 527, 545 (S.D.N.Y. 2014) (property owner has no property interest in a town following building codes, and therefore no due process claim*); Southside Trust v. Town of Fuquay-Varina*, 69 Fed. Appx. 136, 139 (4th Cir. 2003) (mobile home park owner has no property interest in continued sewer service and therefore no due process claim).

### v. Plaintiffs' State Law Causes of Action (Counts IV-VII) Fail to State a Claim.

In Counts IV through VII, Plaintiffs allege that the Executive Order violates the Home Rule Charter, Separation of Powers, Sunshine Act, and Home Rule Act. These claims are all based on misapprehensions of Commonwealth and City laws, as well as the misapplication of facts to those laws. None has any merit, and all should be dismissed.

1.   <u>Home Rule Charter (Count IV) & Separation of Powers (Count V)</u>

Count IV, alleging that the City has violated the Philadelphia Home Rule Charter, begins with Plaintiffs' assertion that "[t]he Mayor of Philadelphia does not have the power to unilaterally repeal a City holiday and replace it with a different holiday of his choosing." (Compl. ¶ 121.)  Plaintiffs then cite to provisions in the Home Rule Charter that require the Civil Service Commission to have regulations which address City holidays (and other matters related to the details and mechanics of pay for City employees).  (Compl. ¶¶ 122-4.)  Based on this, Plaintiffs claim that the Executive Order violates the Home Rule Charter and therefore should be voided by the Court.  This is wrong.

Plaintiffs' allegation that the Executive Order repealed a City holiday does not make it so.  As the Executive Order clearly explains, it changed how the City refers to the second Monday in October, but that day remains a City holiday.  (*See* Compl. Ex. A  at Section A ("SECTION 2:  RENAMING OF HOLIDAY" which states "[t]he City holiday celebrated on the second Monday in October, formerly known as Columbus Day, shall now be designated as Indigenous Peoples' Day").)

In addition, the issuance of an Executive Order by the Mayor is a straightforward and common action that falls squarely within the Mayor's authority as chief executive of the City.  The Mayor is the "chief executive officer of the City" and is "responsible for the conduct of the executive and administrative work of the City and for law enforcement within its boundaries." Philadelphia Home Rule Charter § 4-100.  Among other things, the Mayor has the duty to "encourage among all the executive officers of the City the use of their official powers, to promote and improve the government of the City . . . to promote and develop the prosperity and social well-being of its people."  *Id*. at § 4-105.  The Executive Order at issue in this case follows this structure.  It sets a policy for the executive and administrative work of the City about how

the City holiday that is the second Monday in November will be designated, and it directs certain executive officers of the City to "make appropriate notifications to effectuate this Order." (Compl. Ex. A at SECTION 3.)

Plaintiffs are also wrong in their suggestion that the Civil Service Commission provisions of the Home Rule Charter require the Court to declare the Executive Order void. As discussed above, the Executive Order does not repeal the second Monday in October as a holiday, it merely changes the designation of that day from Columbus Day to Indigenous Peoples' Day. To the extent the Civil Service provisions of the Home Rule Charter are concerned with City holidays, the legislative history included in the notes to the Home Rule Charter explains that the focus is on the budgetary and mechanical pay issues associated with holidays, not the policy determination of what a holiday should be called:

> The approval of the Administrative Board is required of civil service regulations pertaining to the position classification plan, pay plan, hours of work, holidays, and annual vacation and sick leave because these regulations will affect the operating budget, the expenditure of City moneys, and the availability of personnel. They should therefore be subject to the approval of the Mayor, the Director of Finance, and the Managing Director who are primarily concerned with these important phases of municipal administration.

See Philadelphia Home Rule Charter §7-400 at n.2. The Executive Order also clearly tasks the City's executive officers with effectuating the Executive Order. The Mayor has not exercised any powers through the Executive Order that are beyond his core duties and obligations.

Because the Executive Order fits squarely within the Mayor's powers, Count V must also be dismissed as the Executive Order does not violate the separation of powers principles underlying the division of powers across City government.[6] It is of no moment generally that

---

[6] Count V is plainly mistaken as to the structure and obligations of City government and we have focused on briefly explaining that here.

City Council in 2017 passed a Resolution designating "the week of Monday, October 2 through Monday, October 9, 2017 as "Italian American Heritage Week" in the City of Philadelphia." (Compl. Ex. X.)  Nor does Council's right to pass resolutions in any way limit the Executive Branch's powers to determine City holidays or the Mayor's power to issue an Executive Order changing the name of one holiday.  And, of course, a resolution relating to the name of a week during 2017 cannot serve as the basis of a claim regarding the Mayor's Executive Order from 2021.

### 2.  Sunshine Act (Count VI)

Like Count IV, Count VI, alleging that the Executive Order violates the Sunshine Act, is based on Plaintiffs' mistaken premise that in changing the name of a holiday, the Mayor has repealed one holiday and replaced it with a different holiday.  He has not and, as a result, the Sunshine Act is not implicated.  More importantly, the Executive Order itself does not violate the Sunshine Act.  "The Sunshine Act applies only to "official action" or "deliberations" of an agency subject to the Act."  *See League of Women Voters of Pennsylvania v. Com.*, 683 A.2d 685, 689-90 (Pa. Commw. Ct. 1996) (citations omitted).  The Executive Order does not involve deliberations of an agency.  As discussed above, the changing of how the City refers to the holiday that is the second Monday in October from Columbus Day to Indigenous Peoples' Day is an appropriate use of an Executive Order.[7]

------

[7] Placeholder to consider FN addressing that effectuating the Executive Order in its entirety includes amending the Civil Service Regulations to reflect the language designated by the City where it references City holidays (Reg 19) and that this process is underway.  The amendment of those regulations, as Plaintiffs correctly note, will include notice and the opportunity for a hearing.  But that is entirely separate from the Executive Order which is the subject of Plaintiffs' claims here.

### 3. Home Rule Act (Count VII)

Lastly, Count VII appears to assert that because Pennsylvania has designated Columbus Day a holiday, the City must follow that designation. This claim lacks any basis in law. The City is free to designate its own holidays, even if different than those designated by the Commonwealth. The Pennsylvania Statute cited by Plaintiffs refers to the "people of the Commonwealth, the public schools and other educational institutions and historical organizations." (Compl. ¶ 181.) Absent from that is any reference to county or municipal governments. In any event, even if cities had been included, the Statute states that the Governor shall call on the people of the Commonwealth to observe the discovery of the New World. *Id.* (citing 44 P.S. § 32). It does not in any way limit Philadelphia's right to name that day differently and observe an aspect of our shared heritage in another manner. There simply is no tension between the Commonwealth's holiday and the City's holiday; Count VII must be dismissed.

### vi. *Mayor Kenney is Entitled to High Ranking Public Immunity*

To the extent Plaintiffs' claims are based upon Mayor Kenney's statements identified in the Complaint (Compl. ¶¶12-13, 44-46, 71-73, 82), Mayor Kenney is entitled to absolute immunity as to any civil claims arising from these statements. *See Factor v. Goode*, 612 A.2d 591, 593 (Pa. Commw. Ct. 1992). In Pennsylvania, high public official immunity is a "long-standing category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority." *Doe v. Franklin Cty.*, 174 A.3d 593, 603 (Pa. 2017).

> It has long been the law in this Commonwealth that high public officials are exempted by the doctrine of absolute privilege from all civil suits for damages arising out of false defamatory statements and even from statements motivated by malice, provided the statements are made in the course of the scope of the high official's authority or within his

or her jurisdiction.

*Id; see also, Rok v. Flaherty*, 527 A.2d 211, 212 (Pa. Commw. Ct. 1987).

"The purpose [of high public official immunity] is to protect the high public official from liability, not for his or her own personal benefit, but for the benefit of the public he or she serves." *Franklin Cty.*, 174 A.3d at 603 (quoting *Lindner v. Mollan*, 677 A.2d 1195-96 (Pa. 1996)). Specifically, "absolute immunity from civil liability for high public officials is the only legitimate 'means of removing any inhibition which might deprive the public of the best service of its officers and agencies.'" *Lindner*, 677 A.2d at 1196 (quoting *Montgomery v. City of Philadelphia*, 140 A.2d 100, 103 (Pa. 1958)). "The doctrine of absolute immunity set forth in Pennsylvania common law was designed to foreclose even the possibility of suit." *Bell v. Butkovitz, et al.*, No. 160803265, 2017 WL 876144, at *2 (Phila. Com. Pl. Feb. 21, 2017) (emphasis added).

Pennsylvania Courts have recognized that the office of mayor qualifies as a high public official. *See Factor*, 612 A.2d at 592-95 (affirming dismissal on preliminary objections to a defamation action against the Mayor of Philadelphia who identified property owners as "deadbeats" and "tax cheats" at a press conference); see *also McKibben v. Schmotzer*, 700 A.2d 484, 491 (Pa. Super. 1997) (holding that high public official immunity applied to a mayor who made comments in a news release that, although harsh and untrue, were closely related to her duties as mayor). As such, Mayor Kenney is immune from any civil claims predicated upon purportedly false and/or derogatory statements, regardless of the motivation for making these statements. *See, e.g., Franklin Cty.*, 174 A.3d at 603; *Factor*, 612 A.2d at 593.

**IV.**    <u>**CONCLUSION**</u>

For all of the foregoing reasons, the Complaint should be dismissed with prejudice.


CITY OF PHILADELPHIA LAW DEPARTMENT
DIANA P. CORTES, CITY SOLICITOR

<u>/s/ Benjamin Field</u>
Benjamin H. Field
Divisional Deputy City Solicitor
Meghan Claiborne
Deputy City Solicitor
Lydia Furst
Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
(215) 683-5024
benjamin.field@phila.gov

Dated: May 12, 2021

29

## CERTIFICATE OF SERVICE

I, Lydia Furst, hereby certify that I caused to be served today one copy of the foregoing **Motion to Dismiss and Memorandum of Law in Support** upon all counsel of record via CM/ECF.


*/s/ **Lydia Furst***
_____

Lydia Furst
City of Philadelphia Law Department

Dated: May 12, 2021