IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONFERENCE OF PRESIDENTS OF MAJOR ITALIAN AMERICAN ORGANIZATIONS, INC., *et al.*,     *Plaintiffs*, <br><br> v. <br><br> CITY OF PHILADELPHIA and MAYOR JAMES F KENNEY,     *Defendants*. | CIVIL ACTION <br> NO. 21-1609 |

<u>**MEMORANDUM**</u>

**Jones, II   J.**                                                                                     **January 12, 2022**

### I.   Introduction

At its core, this case is about the City of Philadelphia and its Mayor, James Kenney, issuing an Executive Order ("Executive Order 2-21") that allegedly discriminates against Italian Americans by designating that the City holiday known as "Columbus Day" shall be known as "Indigenous Peoples' Day" in the City of Philadelphia.  Philadelphia City Councilmember, Mark Squilla, Jodi Della Barba, the 1492 Society, Grand Lodge of Pennsylvania, Sons and Daughters of Italy,[1] and Conference of Presidents of Major Italian American Organizations, Inc. (collectively "Plaintiffs") bring the present action against the City of Philadelphia and Mayor James F. Kenney (collectively "Defendants"), alleging violations of: the Equal Protection Clause under 42 U.S.C. § 1983; the Philadelphia Home Rule Charter; the separation of powers doctrine; the Pennsylvania Sunshine Act; and the Home Rule Act.  Plaintiffs also seek declaratory judgments to find that Italian Americans are a protected class, and that Executive Order 2-21 violates the Equal Protection Clause.

---

[1] This party was brought in as an Interpleader, but, for purposes of this opinion, the Court will refer to the Grand Lodge and all other Plaintiffs collectively.

Defendants have moved to dismiss the above-captioned case in its entirety, arguing that: Plaintiffs lack standing, the name change of the holiday constitutes government speech, and, Plaintiffs fail to state a viable equal protection claim. For the reasons stated herein, Defendants' Motions for Dismissal (ECF Nos. 17 and 18) are granted.

## II.     Statement of Facts

### A.  Columbus Day Nationally

Columbus Day has been recognized as a national government holiday since at least 1934. Compl., ECF No. 1, ¶ 34. Italian immigrants and Italian Americans have historically embraced, and continue to celebrate, Christopher Columbus as a symbol of the voyage their families endeavored when immigrating from Italy to the United States. Compl. ¶ 26. Plaintiffs state that Columbus Day was recognized, at least in part, due to the discrimination Italian Americans faced. Compl. ¶ 30.

### B.  Columbus Day in Philadelphia

Plaintiffs claim that both Christopher Columbus and Italian Americans are facing persecution throughout the country. Compl. ¶ 36. Specifically, in Philadelphia, Italian Americans became concerned when the city began discussing whether to cancel Columbus Day. Compl. ¶ 36. In early 2018, Plaintiff and City Councilmember, Mark Squilla, enlisted Robert F. Petrone, Esq., a renowned Christopher Columbus expert, to research Columbus's true historical record. Compl. ¶¶ 37-38.

After conducting his investigation, Petrone provided Philadelphia City Council with two (2) reports detailing his findings, which found no evidence that Columbus mistreated Indigenous People. Compl. ¶¶ 41-43; *see* Petrone's Reports attached to Compl. as Exhibit F. Rather, his reports indicate that Columbus repeatedly protected tribal people. Compl. ¶ 43. Despite

Philadelphia City Council having been provided with Petrone's reports, Mayor Kenny issued Executive Order 2-21[2] on January 27, 2021, stating:

> [T]he story of Christopher Columbus is deeply complicated…Columbus enslaved indigenous people, and punished individuals who failed to meet his expected service through violence and, in some cases, murder…[O]ver the last 40 years[,] many states and cities have acknowledged this history by recognizing the holiday known as Columbus Day instead as Indigenous Peoples' Day…The City holiday celebrated on the second Monday in October, formerly known as Columbus Day, shall now be designated as Indigenous Peoples' Day.

Compl. ¶¶ 44-45; *see* Executive Order No. 2-21, attached to Compl. as Exhibit A.

Following the issuance of Executive Order 2-21, Mayor Kenny noted:

> While changes to City holidays may seem largely symbolic, we recognize that symbols carry power.  We hope that for our employees and residents of color, this change is viewed as an acknowledgment of the centuries of institutional racism and marginalization that have been forced upon Black Americans, Indigenous people, and other communities of color.  At the same time, we are clear-eyed about the fact that there is still an urgent need for further substantive systemic change in all areas of local government.

Compl. ¶ 46.

### C.  Other Discriminatory Acts by Mayor Kenney

In addition to changing the name of Columbus Day, Plaintiffs allege that Mayor Kenney has repeatedly taken steps that form a pattern of racial discrimination against Italian Americans. Compl. ¶ 66.  For example, in a 2016 statement about immigration and his desire for Philadelphia to remain a sanctuary city, Mayor Kenney stated, "This is undocumented brown and black people[,] and that's what drives the underlying source of anger…If this were [C]ousin Emilio or Cousin Guido, we wouldn't have this problem because they're white."  Compl. ¶ 82.

In addition to his comments, Plaintiffs suggest that Mayor Kenney participated in a chain of discriminatory conduct, beginning with the removal of the Frank L. Rizzo statue from the

---

[2] Plaintiffs state that Mayor Kenny issued such Executive Order unilaterally.  Compl. ¶ 44.

steps of the Municipal Services Building. Compl. ¶ 67. To date, the City has not returned the statue to the Frank L. Rizzo Monument Committee. Compl. ¶ 68.[3]

After removing the Rizzo statue, Mayor Kenney prepared to remove the Christopher Columbus statue from Marconi Plaza. Compl. ¶ 69. Despite this plan, Plaintiffs' counsel was notified by a City Hall employee, and an immediate injunction halted its removal. Compl. ¶ 69.[4]

When Italian Americans from South Philadelphia gathered around the Columbus statue in Marconi Plaza, Mayor Kenney labeled them as "vigilantes" and ordered them to "stand down." Compl. ¶ 72. On the belief that such "vigilantes" were roaming the city, on June 16, 2020, Mayor Kenney ordered the reassignment of Police Captain Lou Campione from his command in South Philadelphia. Compl. ¶ 73. However, when crowds gathered to protest in support of the Black Lives Matter movement, he waived code and curfew violations. Compl. ¶¶ 70-71.

In a more recent discriminatory action, Plaintiffs claim that Mayor Kenney purposefully delayed COVID-19 vaccine distribution to Italian American communities. Compl. ¶ 75. When Philadelphia released the first twenty (20) Philadelphia zip codes eligible to receive the COVID-19 vaccines, he skipped over those with the largest concentration of Italian Americans. Compl. ¶¶ 76-77.

### III.   Procedural History

On April 6, 2021, Plaintiffs commenced the present action in the United States District Court for the Eastern District of Pennsylvania. *See* Compl. ¶ 1. On April 12, 2021, the Grand Lodge of Pennsylvania, Sons and Daughters of Italy filed a Motion to Intervene (ECF No. 10), which this Court granted on April 27, 2021 (ECF No. 14). On May 12, 2021, Defendants filed

---

[3] The removal of the Frank L. Rizzo statue is currently part of a separate lawsuit before this Court (21-CV-1609). For purposes of the present opinion, the Court will not further consider the merits of such claim.

[4] Litigation over the removal of the Christopher Columbus statue is in state court. Therefore, the Court will not consider the merits of this issue further.

the present Motions to Dismiss (hereinafter "Motions") for both lack of jurisdiction and failure to state a claim. ECF Nos. 17 & 18. Defendants argue that, not only are Plaintiffs' allegations frivolous, but they lack standing to bring the present Complaint. Plaintiffs filed Responses in Opposition (hereinafter "Responses") on May 26, 2021, arguing not only that the Government cannot treat ethnic groups differently, but also that all Plaintiffs have standing either as Italian Americans themselves or as advocates on behalf of Italian Americans. ECF Nos. 19 & 20. With these filings, Defendants' Motions are ripe for the Court's review.

## IV.  Standards of Review

### A. Subject Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1)

A challenge to subject matter jurisdiction under Rule 12(b)(1) may take two (2) forms: a facial or factual challenge. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). If a facial challenge concerns an alleged pleading deficiency, the trial court is restricted to a review of the allegations of the complaint and any documents referenced therein. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008); *Gould Elec. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000). With a facial challenge, "the trial court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A factual challenge "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *CNA*, 535 F.3d at 139 (internal citation and quotation marks omitted). If the challenge before the trial court is a factual challenge, the court does not accord any presumption of truth to the allegations in the complaint, and the plaintiff bears the burden of proving subject-matter jurisdiction. *Id.* With a factual challenge, the court may weigh evidence outside the pleadings and make factual findings related to the issue of

jurisdiction. *Id.*; *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen*, 549 F.2d at 891. A court must grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) "if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d at 243.

      B. **Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)**

Rule 12(b)(6) provides for dismissal of a complaint, in whole or in part, for failure to state a claim upon which legal relief can be granted. In deciding a motion to dismiss, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 318 (3d Cir. 2008) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). While these claims do not require detailed facts, "a complaint must do more than allege the plaintiff's entitlement to relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). A complaint must "show" the plaintiff is entitled to relief. Id. (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234-235 (3d Cir. 2008)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Courts reviewing a motion to dismiss pursuant to Rule 12(b)(6) must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *See Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2008)); *see also Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). In

6

the Third Circuit, the Court's review "is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate when, even assuming all of plaintiff's claims as true, plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. If a plaintiff does not "nudge [his/her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id*.

V.   **Discussion**

   A. **Standing**

Derived from Article III, standing "is the threshold inquiry in every case, one for which the 'party invoking federal jurisdiction bears the burden of [proof].'" *Hassan v. City of N.Y.*, 804 F.3d 277 (3d Cir. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Article III standing limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong. *Philadelphia Fed'n of Tchrs. v. Ridge*, 150 F.3d 319, 322-323 (3d Cir. 1998); *Pro. Dog Breeders Advisory Council, Inc. v. Wolff*, 752 F. Supp. 2d 575, 583 (E.D. Pa. 2010).

To establish standing, "a plaintiff invoking federal jurisdiction bears the burden of establishing three elements...First, it must establish that it has suffered an 'injury in fact,' meaning a concrete and particularized invasion of a legally protected interest." *Hartig Drug Co., Inc. v. Senju Pharmaceutical Co. Ltd.*, 836 F.3d 261, 269 (3d Cir. 2016) (citing *Lujan*, 504 U.S. at 560)). "Second, [a plaintiff] must establish a 'causal connection between the injury and the

7

conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Id*. (citing *Lujan*, 504 U.S. at 506) (internal quotation marks omitted). Third, a plaintiff must establish "a likelihood 'that the injury will be redressed by a favorable decision.'" *Id*. (citing *Lujan*, 504 U.S. at 561).

"The existence of Article III standing often turns on the injury-in-fact element." *Hendrick v. Aramark Corp.*, 263 F. Supp. 3d 514, 519 (E.D. Pa. 2017) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-339 (2016)). Injury-in-fact requires particularization— "it must affect the plaintiff in a personal and individual way[,]" and it requires the injury to be concrete— "'real' as opposed to 'abstract[,]' [though not necessarily] 'tangible.'" *Id*.

### 1. Standing Based on Discrimination

Each Plaintiff alleges to have standing, at least in part, because they either are or are affiliated with Italian Americans, and they state that Executive Order 2-21 discriminates against them by replacing it with a holiday designated to a similarly situated group (Indigenous People). Response, ECF No. 20, 10-11. Defendants state that any alleged discrimination is about messaging from changing the holiday's name, not treatment, and it only conveys a generalized grievance, not a particularized and concrete harm. Mot., ECF No. 17, 10. Plaintiffs respond that the act of changing the name of Columbus Day is an affirmative action that results in taking from one group and giving to another at the former's expense. Response, ECF No. 20, 25-26. Having reviewed the filings, the Court agrees with Defendants.

"Unequal treatment is 'a type of personal injury [that] ha[s] long [been] recognized as judicially cognizable[.]'" *Hassan*, 804 F.3d at 289 (citing *Heckler v. Mathews*, 465 U.S. 728, 738 (2004)). "'Discriminatory classification is itself a penalty,' and thus qualifies as an actual

8

injury for standing purposes, where a citizen's right to equal treatment is at stake." *Id.* at 290 (citing *Saenz v. Roe*, 526 U.S. 489, 505 (1999)).

Just because a plaintiff disagrees with the Government's actions, however, does not equate to discriminatory treatment. In *Allen v. Wright*, parents of Black children who were attending public schools in seven (7) school districts sued the Internal Revenue Service ("IRS"), alleging that the IRS had not adopted sufficient standards to deny tax exempt status to racially discriminatory private schools. 468 U.S. 737 (1984). As one claim for standing, the parents alleged that they were directly harmed by the stigmatizing injury caused by racial discrimination. *Id*. at 738. The Supreme Court found that such stigmatic injury is insufficient for standing because, if so, "standing would extend nationwide to all members of the particular racial group against which the Government was alleged to be discriminating...[.]" *Id*. at 756. "Recognition of standing in such circumstances would transform the federal courts into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Id*. at 756 (citing *U.S. v. SCRAP*, 412 U.S. 669, 687 (1973)). *See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 485 (1982) ("[P]sychological consequence presumably produced by observation of conduct with which one disagrees...is not an injury sufficient to confer standing under Art. III[.]")

Similarly, here, Plaintiffs fail to identify any discriminatory impact they have personally experienced from Executive Order 2-21. Like *Allen*, if standing is found in this case based on alleged discriminatory treatment, then any person, apparently located in any state, would have standing because they either have some percentage of Italian ancestry (no matter how small) or consider themselves allies of Italian Americans. Though it is true that standing should not be denied just because many plaintiffs may bring a claim, Plaintiffs fail to explain, and this Court

9

fails to see, how they have been personally impacted and harmed through the renaming Columbus Day to Indigenous Peoples' day.[5]

Plaintiffs continually reference *Hassan* to support that discriminatory classification is, itself, an injury sufficient for Article III standing. 804 F.3d at 291. In *Hassan*, a group of Muslim plaintiffs sued the city of New York, alleging that in the wake of the 9/11 terrorist attacks, the New York City Police Department began singling out Muslims for extra surveillance. *Id*. at 285-286. The court found that these plaintiffs possessed standing, at least in part, because they claimed, "to be the very targets of the allegedly unconstitutional surveillance, [and that] they are unquestionably 'affect[ed]...in a personal and individual way.'" *Id*. at 291 (citing *Lujan*, 504 U.S. at 560 n. 1).

Unlike the plaintiffs in *Hassan*, Plaintiffs, here, fail to state any discriminatory treatment by changing Columbus Day to Indigenous People's day. While the plaintiffs in *Hassan* possessed a right to be free from unconstitutional searches, and they were being targeted by the Government entirely based on their ethnicity, such action is not present here. There is no constitutional right to have the second Monday in October go by a certain name or to have a holiday celebrate a particular ethnicity. Additionally, while the Government in *Hassan* targeted the plaintiffs entirely because of their ethnicity, Plaintiffs, here, fail to show how the name change is related to Christopher Columbus's heritage rather than his individual actions. Moreover, they have failed to show even one (1) instance of how their lives have changed because of Executive Order 2-21. Thus, the guidance *Hassan* provides is minimal.

Similarly, Plaintiffs' reliance on *Evancho v. Pine-Richland Sch Dist.* is equally unpersuasive because the plaintiffs in *Evancho* were able to show that they were clearly being

---

[5] Plaintiffs can seek redress through the legislative process if affronted by the decision. Federal Courts were never intended to be a work-around for such a process.

singled out for their gender-identity.  237 F. Supp. 3d 267 (W.D. Pa. 2017).  In that case, three (3), transgender high school students alleged that a new school board resolution, which required transgender students to either use a single-user bathroom or the bathrooms labeled for those that match the sex on their birth certificates, was a violation of the Equal Protection Clause.  *Id*. at 273-274.  The court found that "[t]he Plaintiffs are being distinguished by governmental action from those whose gender identities are congruent with their assigned sex.  The Plaintiffs are the only students who are not allowed to use the common restrooms consistent with their gender identities."  *Id*. at 285.  Unlike the plaintiffs in *Evancho*, Plaintiffs' Complaint is silent in explaining how their lives have been personally impacted or different by the changing of the holiday's name.  Without such, *Evancho*'s ruling is unavailing.

  Plaintiffs' reference to *Sandberg v. KPMG Peat Marwick, L.L.P.* also provides little guidance to the Court because that case, though mentioning a claim of discrimination, dealt entirely with what appropriate statute of limitation should apply.  111 F.3d 331 (2d Cir. 1997).  Whether the plaintiff possessed standing to bring suit was never addressed, so the Court will not concern itself any further in evaluating the case's applicability to the present action.

  Much like *Sandberg*, *Mardell v. Harleysville Life Ins. Co.* also does not address the issue of standing in the discrimination context.  The *Mardell* court references discrimination as an injury only to consider what period for backpay from employment discrimination was appropriate.  65 F.3d 1072, 1074 (3d Cir. 1995).  This Court agrees that, in some instances, discrimination is, itself, a real injury, but Plaintiffs fail to explain how *Mardell* is applicable to the present case where they fail to state any discriminatory impact to warrant standing.  Because *Mardell* does not contest the plaintiff's standing, its applicability to the present action is limited.

Though Plaintiffs repeatedly reiterate that they have experienced alleged discrimination from Executive Order 2-21, their filings are completely devoid of any particularized discriminatory impact or injury to a legally protected interest. Accordingly, any allegation that all Plaintiffs possess standing because discrimination, itself, is a cognizable injury is entirely insufficient.

2. **Standing Based on Columbus Day Parade and Celebrations**

In addition to the generalized grievances of discrimination, Plaintiffs, specifically Plaintiff Della Barbra, the 1492 Society's Columbus Day parade organizer, the 1492 Society, and the Grand Lodge appear to imply further injury because of Executive Order 2-21's alleged impact on their Columbus Day parade/celebrations. Response 30. Defendants respond that Plaintiffs do not, and cannot, claim that Executive Order 2-21 will prevent them from organizing a parade or further celebrations honoring Christopher Columbus and/or Italian American Heritage. Response 12. Because Plaintiffs' Complaint is void of any alleged inability to still celebrate Christopher Columbus or Italian American ancestry with the holiday's new name,[6] such an implication is also insufficient to warrant standing.

"Allegations of 'possible future injury' are not sufficient to satisfy Article III [standing]." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (quoting *Whitmore v. Arkansas, et al.*, 495 U.S. 149, 158 (1990)). Rather, "[a] threatened injury must be certainly impending." *Whitmore*, 495 U.S. at 155 (internal citation and quotation marks omitted). Imminence "has been stretched beyond the breaking point when…the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control." *Lujan*, 504 U.S. at 564 n.2. The threatened injury must "proceed

---

[6] This is particularly true given that the Federal Holiday's name has not changed.

with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Id*.

Plaintiffs fail to suggest any impending harm from Executive Order 2-21 because they can still celebrate Christopher Columbus under the holiday's new name. Nothing in Executive Order 2-21 prevents Italian Americans from organizing a parade to honor Columbus and/or Italian American heritage, and Plaintiffs do not, and cannot, suggest that it does.[7] *See Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 542 (3d Cir. 2011) ("In the equal protection context, an injury resulting from governmental racial discrimination accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct.") (internal citations omitted). It is within Plaintiffs' own control whether and how they choose to celebrate the holiday formerly known as Columbus Day, so any implication that such is controlled by Executive Order 2-21 is false and cannot afford standing.

### 3. Standing Based on Miscellaneous Discriminatory Acts

In addition to their primary complaints over Executive Order 2-21, Plaintiffs also list numerous, miscellaneous grievances against Defendants. Because the removal of the Frank L. Rizzo statue and attempted removal of the statue of Christopher Columbus are being handled as separate lawsuits, this Court looks to whether Plaintiffs have standing for: the manner in which the City distributed COVID relief vaccinations; the reassignment of one Police Captain from his assignment in the First Police District; the Mayor's statement that Italian Americans gathering at

---

[7] In fact, despite the name change, a parade was still successfully organized in South Philadelphia to commemorate Christopher Columbus and Italian American heritage. *See* Jasmine Payoute, 'It's Insulting': Attendees Of Columbus Day Parade Upset With Latest Ruling On Controversial Marconi Plaza Statue, CBS PHILLY (Oct. 11, 2021, 12:02 AM), https://philadelphia.cbslocal.com/2021/10/11/philadelphia-columbus-day-parade-marconi-plaza-statue/. As "[c]ourts may…take judicial notice of news reports to evaluate 'what was in the public realm'" when deciding a motion to dismiss, the Court's consideration of this fact is appropriate. *U.S. v. Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431, 438 n.3 (E.D. Pa. 2020) (citing *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)).

the Columbus statue were "vigilantes"; and Mayor Kenney's statement in 2016 in which he "stereotyped" Italian Americans.

Again, Plaintiffs do not explain, and this Court fails to see how any such allegations amount to "an injury that is both concrete in nature and particularized to them." *In re U.S. Cath. Conference*, 885 F.2d 1020, 1023 (2d Cir. 1989). *See Mehdi v. U.S. Postal Serv.*, 988 F. Supp. 721, 730 (S.D.N.Y. 1997) ("[W]hile the stigmatizing injury caused by discrimination 'is one of the most serious consequences of government actions and is sufficient in some circumstances to support standing,…such injury accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct.'") (quoting *Allen*, 468 U.S. at 755 (internal citation and quotation marks omitted)). Even with these allegations, Plaintiffs have still failed to state a single basis on which this Court may find standing to consider their Equal Protection claim.

### B. *Arguendo* Equal Protection Violations

#### 1. Government Speech

Assuming *arguendo* that any of the abovementioned Plaintiffs had standing to bring the present action, a conclusion that this Court does not find, Counts I-III of the Complaint must still be dismissed because Defendants' actions are protected by the government speech doctrine. When the Government is speaking, it has the right to hold its own viewpoint. A government entity "is entitled to say what it wishes," *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995), and to select the views that it wants to express. *See*, *e.g., Rust v. Sullivan*, 500 U.S. 173, 194 (1991). "The government must take substantive positions and decide disputed issues to govern.... So long as it bases its actions on legitimate goals, [the] government may

14

speak despite citizen disagreement with the content of its message, for [the] government is not required to be content-neutral." *Keller v. State Bar of Cal.*, 496 U.S. 1, 10 (1990).

The parties have failed to cite, and this Court has failed to find, any cases determining whether holiday names constitute government speech. Accordingly, the Court looks to two (2) related cases for guidance. In *Pleasant Grove City, Utah v. Summum*, the Supreme Court considered whether a religious group's free speech rights were violated by the city's denial of its request to erect a monument in a public park where a Ten Commandments monument stood. 555 U.S. 460 (2009). The Supreme Court upheld the city's decision, ruling that the display of permanent monuments in public parks is a form of government speech. *Id*. at 464.

In making this conclusion, the *Summum* Court relied on three (3) main factors. First, the Court looked to the history of governmental use of monuments, explaining that governments "have long used monuments to speak to the public" and that when a "government entity arranges for the construction of a monument, it does so because it wishes to convey some thought or instill some feeling in those who see the structure." *Id.* at 470. Second, it considered whether the message conveyed by the monuments selected would be ascribed to the Government and found that "there is little chance" that people in the park will fail to identify the Government as the speaker. *Id.* at 471. Third, the Court analyzed whether the municipality "effectively controlled" the messages sent by the monuments because it exercised "final approval authority over their selection." *Id.* at 473.

A few years after *Summum*, the Supreme Court revisited the government speech doctrine in *Walker v. Tex. Div., Sons of Confederate Veterans, Inc*. when it considered whether the rejection of a specialty license plate design featuring a Confederate flag by the Texas Department of Motor Vehicles violated the First Amendment. 576 U.S. 200 (2015). Concluding that

specialty license plates convey government speech, the Supreme Court held that Texas was entitled to refuse to issue the plates that featured the proffered design. *Id*. at 219-20. Applying the *Summum* factors, the Court held that the license plates constitute government speech because: (1) "they long have communicated messages from the States," (2) they are "often closely identified in the public mind" with the State, and (3) "Texas maintains direct control over the messages conveyed on its specialty plates." *Id.* at 201-213 (internal citation and quotation marks omitted).

The *Summum/Walker* three-factor test controls here, and each of these factors favor finding that the naming of holidays constitutes government speech. Considering the first factor, the Government has historically communicated through City holidays. The Government determines which days of the year will be recognized as holidays and which employees benefit from a day off. *See* 44 Pa. Stat. Ann. § 11 (West). Second, observers will undoubtedly associate City as the speaker because it chose to change the holiday name. Third, the City of Philadelphia maintains direct control over the messages conveyed of holiday names. Like *Summum* and *Walker*, Philadelphia "has effectively controlled the messages conveyed by exercising final approval authority over their selection." *Id.* at 201 (citing *Summum*, 555 U.S. at 473). Thus, the Court concludes that Executive Order 2-21 renaming Columbus Day constitutes government speech.

Because Executive Order 2-21 constitutes government speech, Plaintiffs, even if they had standing, could not bring a successful Equal Protection violation. The Third Circuit has held that, "[t]he Equal Protection Clause does not apply to government speech." *Fields v. Speaker of Pa. H.R.,* 936 F.3d 142, 161 (3d Cir. 2019). This is because "private citizens have no personal interest in government speech on which to base an equal protection claim." *Id.* at 160. Thus,

even if Plaintiffs had standing to bring an Equal Protection violation, Counts I-III of their Complaint would still require dismissal.

### 2. Prima Facie Equal Protection Claim

Assuming *arguendo* that Executive Order 2-21 was not government speech, a conclusion this Court does not support, Plaintiffs still fail to put forth a prima facie Equal Protection claim. The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." *Hassan*, 804 F.3d at 294. "The Clause announces a fundamental principle: the State must govern impartially." *N.Y. City Transit Auth. v. Beazer*, 440 U.S. 568, 587 (1979). "Thus, an equal protection claim arises when a person 'receiv[es] different treatment from that received by other [persons] similarly situated.'" *Italian Am. One Voice Coal. v. Twp. of W. Orange*, No. 20-CV-12650, 2021 WL 3260855, at *2 (D.N.J. July 30, 2021). "In order to prove a claim of discrimination in violation of Equal Protection, 'a plaintiff must show not only that the state action complained of had a disproportionate or discriminatory impact but that also the defendant acted with the intent to discriminate.'" *Mehdi*, 988 F. Supp. at 729-730 (citing *United States v. Yonkers Bd. Of Educ.*, 837 F.2d 1181, 1216 (2d Cir. 1987)).

Here, Plaintiffs have failed to state *any* discriminatory impact they have personally experienced from the renaming of Columbus Day. As previously explained at length, Plaintiffs cannot claim that they have been prevented from celebrating either Christopher Columbus or Italian American heritage with the renaming of the holiday, and Plaintiffs can still, personally, refer to the holiday as Columbus Day. Though Plaintiffs allege that Defendants' renaming of Columbus Day wipes away recognition of Italian Americans in favor of Indigenous People, they fail to state any discriminatory impact that supports such a conclusion. Put simply, Plaintiffs do

not provide this Court with any details as to how their lives have changed because of the renaming of the holiday. Without such proof, any Equal Protection allegation is futile.

If Plaintiffs had sufficiently alleged discriminatory treatment, they would still fail to establish a prima facie Equal Protection claim because they have not plausibly shown discriminatory intent. Specifically, Plaintiffs have "failed to sufficiently allege that Columbus's heritage contributed to Defendants' decision to" change the name of the holiday. *Italian Am. One Voice Coal.*, 2021 WL 3260855, at *3. *See Page v. Bartels*, 144 F. Supp. 2d 346, 348 (D.N.J. 2001) (denying an Equal Protection claim where race was not the "predominant motive" for government action, even if there was a tangential effect on racial groups); *Italian Am. One Voice Coal.*, 2021 WL 3260855, at *3 ("Defendants removed the [Christopher Columbus] Monument to promote a message of inclusiveness to benefit individuals from all national origins—including Italian Americans—given the historical underpinnings of the Monument.").

Based upon the above, Plaintiffs have failed to plausibly plead a prima facie Equal Protection violation. Accordingly, Counts I-III warrant dismissal.

### C. Pennsylvania State Court Violations

Following the dismissal of Plaintiffs' Equal Protection claims, what remains are allegations under the Philadelphia Home Rule Charter, the Separation of Powers, the Sunshine Act, and the Home Rule Act. For the reasons set forth herein, such claims must be dismissed without prejudice.

Federal courts have original jurisdiction over claims based on federal constitutional law. 28 U.S.C. §§ 636(c), 1331. State law claims that are part of the same "case or controversy" as those federal claims are subject to the Court's supplemental or pendent jurisdiction. *Id.* at § 1367(a). Courts are given discretion to dismiss even those state law claims over which

jurisdiction exists under § 1367(a) in four (4) circumstances: (1) when the claim raises a "novel" or "complex" state law issue; (2) when the state law claim would "substantially predominate" over the related federal claim; (3) when the district court has dismissed all claims over which is had original jurisdiction; and (4): in "exceptional circumstances," when "there are other compelling reasons for declining jurisdiction." *Id.* at § 1367(c). When determining whether to dismiss a state law claim despite supplemental jurisdiction, courts must consider: (1) judicial economy; (2) convenience; (3) fairness; and (4) comity. *Carnegie Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). When all claims establishing original jurisdiction are dismissed before trial, federal courts generally "decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.2d 109, 123 (3d Cir. 2000).

The Third Circuit has repeatedly held that "pendent jurisdiction should be declined where the federal claims are no longer viable, absent 'extraordinary circumstances.'" *Shaffer v. Bd. of Sch. Directors of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (quoting *Tully v. Mott Supermarkets,* 540 F.2d 187, 196 (3d Cir.1976)). The fact that "some investment of time has already been made" should not have dispositive weight. *Id*. "[W]here the underlying issue of state law is a question of first impression with important implications … in Pennsylvania, factors weighing in favor of state court adjudication certainly predominate." *Id.* at 913.

Here, no "particular prejudice," nor much additional expense, would result from any additional delay because Plaintiffs can easily file similar briefs in state court. Because Plaintiffs raise many claims that closely impact the citizens of Philadelphia, state court is a more

19

appropriate venue to address their supplemental state law claims, so Counts IV-VII are dismissed without prejudice.

## VI.     Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss are granted, and Plaintiffs' Complaint and the Interpleader action must be dismissed in their entirety. An appropriate Order follows.